## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **DASHAY LUVERT**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 6523 |
| | ) | |
| **CHICAGO HOUSING AUTHORITY**, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Dashay Luvert ("Luvert") sued the Chicago Housing Authority ("CHA") in the Circuit Court of Cook County based on CHA's refusal to have extended the term of her housing voucher.[1]  Having removed the case to this federal District Court, CHA now brings a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss the Complaint for failure to state a claim upon which relief may be granted.  For the reasons that follow, that motion is granted as to all counts save Counts IV and V, which are remanded to the state Circuit Court.

## Motion To Dismiss Standards

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted."  Familiar Rule 12(b)(6) principles require the district court to accept as true all of Luvert's well-pleaded factual allegations and view them in the light most favorable to her as the non-moving party (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632

---

[1]  Initially that lawsuit was brought by five plaintiffs, including Luvert.  But when the action came to this District Court via removal, this Court determined (and communicated to plaintiffs' counsel) that although their claims had some common elements, each plaintiff really had a separate lawsuit that should not have been linked with the others.  As a result counsel dismissed out the other four plaintiffs without prejudice and have proceeded with Luvert alone.

(7th Cir. 2013)).  But "legal conclusions or conclusory allegations that merely recite a claim's elements" are not entitled to any presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)).

In the past decade the Supreme Court made an important change in the evaluation of Rule 12(b)(6) motions via what this Court regularly refers to as the "Twombly-Iqbal canon," a usage drawn from Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as more finely tuned in Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), and Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  That canon has introduced the concept of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted Twombly and Iqbal to require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted)).  As McCauley went on to reconfirm, claimants "must give enough details about the subject-matter of the case to present a story that holds together" (id.).

Because the focus of Rule 12(b)(6) motions is on the pleadings, they "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" (Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).  But a nonmovant has more flexibility, for he "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings" (id.).

In granting a dismissal courts should usually give a claimant at least one opportunity to amend (Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind., 786 F.3d 510, 519 (7th Cir. 2015)).  And consistently with the principles of Rule 15(a)(2) courts generally grant

leave to amend freely. But where "it is <u>certain</u> . . . that any amendment would be futile or otherwise unwarranted," the court can deny leave to amend (<u>id.</u> at 519-20, emphasis in original). And as the ensuing lengthy in depth analysis will reveal, the flaws in Luvert's attempt to state any federal claim for relief cannot be cured.

Supplemental state law claims may be dismissed without prejudice when all federal claims are dispatched before trial (<u>Pugel v. Bd. of Trs. of the Univ. of Ill.</u>, 378 F.3d 659, 669 (7th Cir. 2004)). Indeed, "when the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations" (<u>Williams v. Seniff</u>, 342 F.3d 774, 794 (7th Cir. 2003) (citation omitted)). Such countervailing considerations include three limited exceptions identified in <u>Williams Elecs. Games, Inc. v. Garrity</u>, 479 F.3d 904, 906-07 (7th Cir. 2007): (1) "where the statute of limitations would bar the refiling of the supplemental claims in state court," (2) "where substantial federal judicial resources have already been expended on the resolution of the supplemental claims" and (3) "where it is obvious how the claims should be decided."

**Background**

At the core of Luvert's five-count Complaint is her inability to participate in the Housing Choice Voucher Program ("Voucher Program"), a low-income housing assistance program administered by CHA on behalf of the Department of Housing and Urban Development ("HUD") pursuant to 42 U.S.C. § 1437f, a part of the United States Housing Act of 1937 as amended ("the Act") -- for a description of the Voucher Program, see 24 C.F.R. § 982.2 and the Chicago Housing Authority Administrative Plan for the Housing Choice Voucher Program

(Nov. 20, 2012) at 1-1.[2]  After selecting a family to participate in the Voucher Program (the term "family" also encompasses single individuals in HUD's definition -- see 24 C.F.R. § 5.403), a Public Housing Authority ("PHA") such as CHA issues a voucher with which the family can shop for housing (Reg. 302(a)).  Once the family negotiates a lease with a prospective landlord, the PHA inspects the unit and, if the unit meets certain criteria, enters into a Housing Assistance Payment ("HAP") contract with the landlord to pay whatever portion of the rent it will subsidize (Regs. 302(b) and 305).

Of particular relevance to this case, a family has a limited time to submit a unit for approval (Reg. 302(c)).  That term may be extended (Reg. 303(b)), although as will become apparent the parties dispute sharply what HUD regulations say about that extension. In addition, once a family submits a request for approval the voucher's term may be tolled, as it were -- what the regulations call a "suspension" -- while the PHA inspects the unit (Reg. 303(c)).[3]

_____

[2]  Further citations to provisions of the Act take the form "Section --," omitting the prefatory "42 U.S.C." Similarly, citations to HUD regulations concerning the Voucher Program take the form "Reg. --," omitting the prefatory "24 C.F.R. § 982." Memoranda filed by the parties are cited "Mem." or "Reply Mem.," with prefixes of "L." and "C." for Luvert and CHA respectively.  CHA's Administrative Plan for the Housing Choice Voucher Program (Nov. 20, 2012) is referred to as the "Administrative Plan" and is cited as "Plan --."  While that document was superseded on January 1, 2015 and Luvert's voucher did not expire until January 5 (Complaint ¶ 48), with notice of that expiration being delayed until this May (Complaint ¶ 53), a comparison of the latest document (approved and implemented on January 14, 2015) with the provisions of the Administrative Plan relied upon in this opinion reveals that the changes are not relevant to Luvert's case, so for the sake of simplicity this opinion cites only to the 2012 Administrative Plan.

[3]  Amendments to the regulations now make that suspension mandatory, although PHAs had the discretion to establish their own suspension policies during the times relevant to this case (see Housing Choice Voucher Program:  Streamlining the Portability Process, 80 Fed. Reg. 50564, 50573 (Aug. 20, 2015)).

According to the allegations in the Complaint, which this Court must accept as true for purposes of deciding the motion, Luvert was deemed eligible and approved for participation in the Voucher Program after some nine years on CHA's waiting list, receiving her voucher on July 18, 2014 (Complaint ¶¶ 1, 47-48).  She visited more than ten apartments over the next three months before settling on one in October 2014 (Complaint ¶¶ 49-50).  That apartment failed CHA's inspection, however, and Luvert did not submit another unit for approval until the end of December 2014 (Complaint ¶¶ 50-51).  Although the precise timing of subsequent events is not immediately clear from the Complaint, the second unit's owner backed out before a lease was signed, after which Luvert "immediately" communicated with CHA to request an extension of her voucher term (Complaint ¶¶ 52–53).  Luvert does not state whether she made that request before or after her voucher expired on January 5, 2015 (see Complaint ¶ 48) or whether CHA had suspended her voucher's term during the two unfruitful approval processes. In any event, in May 2015 she received notice that her voucher had expired (Complaint ¶ 53).  That notice did not inform her that she had a right to an informal hearing or an informal review (a right that CHA contends she did not have), nor has she received any such hearing or review (Complaint ¶ 54).

## Dismissal of Federal Claims

Animating each of Luvert's five counts is the protest that she has lost her opportunity for a federal housing subsidy through no fault of her own.  By all accounts she was patient in waiting for that opportunity and diligent in pursuing it.  It is difficult for low-income individuals to find housing, and Luvert is certainly not to blame if one landlord who was willing to rent to her did not offer her a unit that could satisfy CHA and another backed out at the last minute.

That she lost her scarce opportunity (and her spot on the waiting list) in that way seems unfair, and she dismisses as "absurd" CHA's Mem. 12 argument that, fair or not, its refusal to extend the term of her voucher or to permit her to challenge that refusal was lawful. And she assails CHA's account of what she was entitled to as "creat[ing] a nonsensical framework whereby an applicant who is subject to lifetime registration on a state sex offender registry and therefore denied assistance" is afforded a wider array of procedural options than one "who simply could not find a landlord willing to rent to her within the time limit" (L. Mem. 17).

For all its humanly compelling elements, however, the problem with Luvert's lawsuit is that housing assistance is not distributed on the basis of individual worth and so can be withheld on bases unrelated to individual culpability. As Eidson v Pierce, 745 F.2d 453, 457 (7th Cir. 1984) said more than 30 years ago:

> At the heart of this case is the fact that there are not enough Section 8 housing units to accommodate all who are eligible and willing to take them. This case thus involves the processes used to allocate these limited and valuable benefits among a large number of eligible applicants. At issue are the rights not only of those plaintiffs who were denied Section 8 benefits but also of those who received those benefits in the plaintiffs' stead.

Administering such a system is bound to necessitate some harsh choices, a need that in turn gives to some unfeeling policies.

No doubt CHA's use-it-or-lose-it approach to the Voucher Program is one such policy. It operates on the implicit premise that the next family called from the waiting list will be more successful in locating an acceptable unit, with a corollary presumption that the disappointed family could have been more diligent in its search. It gives families only one opportunity to rebut the latter presumption -- in their request for an extension (see Plan 5-10). But a case

manager's decision not to grant that extension is not subject to even an internal review, let alone an impartial reexamination (id.).

Ordinarily a court would weigh whatever budgetary considerations led CHA to implement what is almost a total lack of procedures against Luvert's interest in subsidized housing and the expected value of additional procedures in avoiding erroneous outcomes (see Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976)). Yet such balancing is appropriate only where the lack of additional procedures has deprived the plaintiff of some property or liberty interest (Khan v. Bland, 630 F.3d 519, 527 (7th Cir. 2010)), and as explained below HUD has crafted the Voucher Program to prevent Luvert from laying claim to any property interest of which she could be deprived by the refusal to extend her voucher's term.

Perhaps sensing her vulnerability on that point, Luvert casts CHA's refusal to grant her request for an extension as contrary to HUD regulations, which she says entitle her to the housing assistance of which she was thus deprived. On her reading, which she advances as the only interpretation compatible with the Constitution and with Act § 1437d(k), a PHA may grant a request for an extension or issue a new voucher but it cannot drop someone from its housing assistance program, after letting a voucher expire, without either an informal hearing or an informal review (see Complaint ¶ 77 and L. Mem. 15-18). And after amending her responsive memorandum Luvert now argues that CHA's own Administrative Plan compels the same conclusion (L. Mem. 18-19). This opinion will therefore address the asserted implausibility of that interpretation of HUD's regulations -- though not, for the reasons stated in the last section of this opinion, of CHA's Administrative Plan -- before turning to Luvert's more serious but equally

unsuccessful contention that those regulations are unconstitutional or are contrary to the Act in permitting CHA simply to let her voucher expire.

**Rights Under HUD Regulations**

At issue as to the meaning of HUD's regulations is whether the denial of Luvert's request for an extension could result in her being dropped from the Voucher Program altogether and, if so, whether that denial triggered a right to an informal review. Yet CHA focuses almost unceasingly on the argument that Luvert was not terminated from participation in the Voucher Program, so that she could not have been terminated for an improper reason and she therefore also lacks the notice and hearing rights flowing from such termination, because she was never a "participant" (C. Mem. 4-5, 11-12, 12-13; C. Reply Mem. 5-7).

As a purely definitional matter that argument is correct, although for a reason explained only in CHA's reply memorandum. In CHA's initial memorandum, proof that Luvert was not a participant was limited to the terms of her voucher (which CHA attached), and CHA's reply again insists that the adequacy of the Complaint rests upon the language of that extraneous document (see C. Mem. 4-5; C. Reply Mem. 6 & n.2). While the voucher is of course referred to in the Complaint, it makes no mention of its terms, makes no suggestion that Luvert's understanding of how the Voucher Program operated stemmed from those terms and asserts no claim for relief sounding in contract. Consequently the voucher is not a document "critical to the complaint and referred to in it" (Geinosky, 675 F.3d at 745 n.1) (emphasis added), so it cannot be considered on the current motion to dismiss.

This motion also will not draw conclusions about HUD regulations from the Housing Choice Voucher Program Guidebook (7420.10G) (2001), http://portal.hud.gov/hudportal/

HUD?src=/program_offices/administration/hudclips/guidebooks/7420.10G ("Guidebook").

While that Guidebook is made available through HUD and is quoted in CHA's Administrative

Plan, its second (unnumbered) page bears the legend:

> The contents of this guidebook are the views of the contractor and do not necessarily reflect the views or policy of the Department of Housing and Urban Development or the U.S. Government.

By contrast, portions of the Guidebook that are quoted in the Administrative Plan are of course

probative of CHA's own policies.

To return to the point made clear in CHA's reply memorandum, "participant (participant

family)" is defined in Reg. 4(b) in these terms:

> A family that has been admitted to the PHA program and is currently assisted in the program. The family becomes a participant on the effective date of the first HAP contract executed by the PHA for the family (first day of initial lease term).

Because the Complaint does not suggest that CHA ever entered into such a contract on Luvert's

behalf, her status was never that of a "participant" in the Voucher Program. Instead she was an

"applicant": a person who "has applied for admission to the [Voucher Program] but is not yet a

program participant" (id.).[4] And because there was no "participation" on Luvert's part that

necessitated termination, CHA is correct in asserting that none of the rules regulating notice,

hearing and basis for termination applies.

---

[4] Bizarrely, CHA also seems to contest the issue of whether Luvert was even an applicant, emphasizing with each mention of that word that the plaintiffs in <u>Vandermark v. Housing Auth. of City of York</u>, 663 F.2d 436 (3d Cir. 1981) were "applicants" (C. Reply Mem. 11). But every time CHA seeks to differentiate Luvert from the <u>Vandermark</u> plaintiffs, it lists so many facts about each that it is difficult see what it thinks the salient differences are. For the sake of clarity, this Court notes that the only really relevant distinction is that Luvert was not deemed ineligible on the basis of controvertible facts while the <u>Vandermark</u> plaintiffs were.

That is not dispositive, however, for <u>applicants</u> still have certain protections under HUD regulations and the Constitution. While CHA focuses its efforts on rebutting any rights that might adhere to participants, the fact that litigants plead claims for relief in federal court -- not legal theories or causes of action[5] -- means that this opinion must undertake an examination of whether Luvert's rights as an applicant eligible for housing assistance were violated. And Luvert's memorandum in opposition to CHA's motion (at least when not discussing constitutional issues) seems to concede that she was merely an applicant -- though it contends that she was nonetheless entitled to certain procedures (cf. L. Mem. 15-19).

As might be guessed, the procedures afforded to applicants are less extensive than those provided for families already participating in the Voucher Program, because the latter undoubtedly have a property interest that must be respected (<u>Simmons v. Drew</u>, 716 F.2d 1160, 1162 (7th Cir. 1983)).  Informal hearings under Reg. 555 are reserved for challenges raised by participant families, leaving applicants who were denied housing assistance the procedure of informal review under Reg. 554.

On that score the root of Luvert's dilemma is that neither procedure is available as to a "determination not to approve an extension of the voucher term" (Reg. 554(c)(4) and 555(b)(4)). Yet HUD regulations are equally clear that "[t]he PHA must give an applicant an opportunity for an informal review of the PHA decision denying assistance to the applicant" (Reg. 554(b); see

_____

[5] See two opinions (both authored by Judge Easterbrook in the same year) that, though over two decades old, should in this Court's view be mandatory reading for federal practitioners: <u>NAACP v. Am. Family Mut. Ins. Co.</u>, 978 F.2d 287, 292 (7th Cir. 1992) and <u>Bartholet v. Reishauer A. G. (Zurich)</u>, 953 F.2d 1073, 1078 (7th Cir. 1992).  Though <u>Bartholet</u> has been more frequently cited over the years, they are equally felicitous in their exposition of the principle stated in the text.

also Reg. 201(f)). Those two provisions present a problem: Because Luvert cannot submit an apartment for CHA approval with an expired voucher (see Reg. 302(c)), a refusal to extend her voucher's term literally leaves her with neither a usable voucher nor her former place on the waiting list -- a consequence that (again literally) stands in the way of her participation in the Voucher Program.

Luvert advances a number of incompatible arguments to avoid what seems to be the only plausible interpretation that resolves whatever tension exists between Reg. 554(b) and Reg. 554(c)(4): Refusing to grant an extension does not accelerate a voucher's expiration and so by definition is not a decision to deny assistance. Instead, hoping to establish that she has a right to informal review because CHA's refusal to extend her voucher's term was somehow a "denial of assistance," Luvert directs this Court's attention to the enumeration in Reg. 552(a)(2) of the forms that such a denial may take (L. Mem. 8-9, 19). But having done so, she then urges that such a refusal to extend cannot be a denial of assistance (L. Mem. 16-18). From the facts (1) that a failure to obtain approval of a lease before a voucher expires is not one of the grounds upon which "a PHA may deny assistance . . . because of a family's action or failure to act" (Reg. 552(a)(1)) and (2) that the other decisions that are exempt from a requirement for informal review do not drop a family from the Voucher Program (cf. Reg. 554(c)), she somehow contends that a decision not to extend a voucher's term must in actuality not be the decision to let the voucher expire and thus move to the next family on the waiting list, but rather a decision to issue a new voucher to replace the expiring one (L. Mem. 16-18).

Simply looking to what Luvert attempts to prove reveals why this Court cannot possibly accept her argument. As she would have it, CHA has only two choices (renew or reissue her

voucher), but having said that Luvert then contends that CHA must follow yet a third route by providing an informal review. Creating such a three-entree menu is a culinary impossibility, for it requires reliance on wholly inconsistent assessments of whether the denial of an extension request does or does not qualify as a denial of assistance. Moreover, Luvert's list of choices does not even produce a sensible framework. There would be no purpose in saying that refusals of an extension are not reviewable if a PHA's only options were to grant the extension or to do the functional equivalent by reissuing the voucher -- or, failing those, to grant an informal review (cf. Reg. 554(c)(4)).

Other provisions make it clear, moreover, that a refusal to extend a voucher's term does in fact leave an applicant unable to participate in the Voucher Program and lacking a spot on the waiting list (although free to reapply). If that were not so, HUD would not have to adopt regulations to shield certain families from that result. For example, HUD does <u>not</u> grant PHAs discretion over that decision when the extension is necessary "as a reasonable accommodation . . . to make the program accessible to a family member who is a person with disabilities" (Reg. 303(b)(2)), a provision that makes sense only if the refusal of an extension would work some hardship on the family. Similarly, HUD recently amended its regulations to make mandatory the formerly discretionary suspension of a voucher's term while the PHA reviews a unit for compliance with its housing criteria, justifying the amendment as averting conflict between families and PHAs (Housing Choice Voucher Program: Streamlining the Portability Process, 80 Fed. Reg. 50564, 50565-66 (Aug. 20, 2015); see Reg. 303(c)) -- such conflicts that HUD wanted to end are likewise comprehensible only if a voucher's expiration functioned to remove a family from the Voucher Program.

It is equally apparent that HUD intended that PHAs should have complete freedom in deciding whether to grant extensions that are made discretionary. Not only did HUD make their decisions unreviewable (Reg. 554(c)(4) & 555(b)(4)), but it removed language from a previous version of its regulations that had caused one court (<u>Chesir v. Hous. Auth. of the City of Milwaukee</u>, 801 F. Supp. 244, 249, 251–53 (E.D. Wis. 1992)) to conclude that the <u>automatic</u> termination of a voucher holder's involvement in the housing assistance program was contrary to HUD regulations.

Under the old housing voucher program, the pertinent regulation read (24 C.F.R. § 887.165(b) (emphasis added), quoted in <u>Chesir</u>, 801 F. Supp. at 249):

> In deciding whether or not to extend the housing voucher, the PHA <u>must consider</u> the following:
>
>> (1) What kind of efforts the family has made to find a suitable dwelling; and
>>
>> (2) Whether there is a reasonable possibility that the family may, with the additional advice or assistance, if any, find a suitable unit.

But that language was removed in 1995 when HUD combined the housing certificate and housing voucher programs into a single assistance scheme (see Section 8 Certificate and Voucher Programs Conforming Rule, 60 Fed. Reg. 34660, 34703 (July 3, 1995)), so that the pertinent regulation (Reg. 303(b)(1) (emphasis added)) now states:

> <u>At its discretion</u>, the PHA may grant a family one or more extensions of the initial voucher term in accordance with PHA policy as described in the PHA administrative plan. Any extension of the term is granted by PHA notice to the family.

And HUD adopted the portion of the regulation that applies to Luvert after receiving public comments debating the extent to which a PHA should have discretion to let a voucher expire (see

Section 8 Certificate and Voucher Programs Conforming Rule, 60 Fed. Reg. 34660, 34669-70 (July 3, 1995)). HUD's only limit on a PHA's discretion in that regard is a requirement that it list its policies regarding extensions in its administrative plan (see Reg. 54(d)(2)).

So contrary to Luvert's account of how the Voucher Program is set up, HUD manifestly intended that a voucher's expiration should operate to drop an otherwise eligible family from the program and that PHAs would be granted discretion over whether to extend that voucher's term. And turning from Luvert's account in general to its premises, this Court finds that her proffered interpretation of the individual regulations upon which her argument is sought to be built is totally unwarranted.

Thus Reg. 554(b) provides an opportunity for informal review whenever a PHA makes a "decision denying assistance to the applicant," not whenever the PHA takes an action that as a practical matter may or will adversely affect a family's ability to obtain assistance. In that respect the refusal to grant an extension does not of itself deny assistance to a family, nor does it withdraw or otherwise invalidate the voucher. Instead what ultimately makes such a family unable to obtain housing assistance is the passage of time rather than any decision by the PHA.

Nor does Reg. 552(a)(2) support Luvert's assertion that what CHA did qualifies as a "[d]enial of assistance." Instead ordinary common sense, often dressed up by courts as a canon of construction (expressio unius est exlusio alterius), flat-out rejects such a reading of that regulation:

> Denial of assistance for an applicant may include any or all of the following: denying listing on the PHA waiting list, denying or withdrawing a voucher, refusing to enter into a HAP contract or approve a lease, and refusing to process or provide assistance under portability procedures.

Simply reading those included actions negates the notion that allowing a voucher to expire under its own terms equates to the active determinations listed in the regulation.

To be sure, the end result is that Luvert ultimately did not receive assistance even though no "decision denying assistance" was made within the meaning of (Reg. 554(b)). But that result does not validate her argument that HUD regulations prohibit that result because the expiration of a voucher is not a proper ground for dropping her from the Voucher Program.

In short (an odd locution, given the length of what has gone before), Luvert's distorted reading of HUD regulations is unsustainable. All her claims for relief based on CHA's having assertedly violated those regulations fall flat.

**Possible Right Under the Housing Act**

As for Complaint Count III, which alleges a violation of the Act, CHA urges dismissal of that Count because the Act assertedly does not create a private right of action. It is of course fundamental that all federal claims must have their origin in statute or the Constitution and that the courts will not imply a private right of action under a statute absent a strong indication of Congressional intent to create one (Gonzaga Univ. v. Doe, 536 U.S. 273, 283-85 (2002); Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001)). But C. Mem. 9-10 points only to a few non-precedential District Court decisions concerning Section 1437d(k), under which HUD must require each PHA to establish grievance procedures that a tenant can use, while it instead points to four district court cases finding that other parts of that section -- and other sections of the Act entirely -- create no private rights, plus one case that, in marked contrast to its treatment of other counts, did not dismiss the Section 1437d(k) claim for lack of a private right. By contrast, the only Court of Appeals statements of the law regarding Section 1437d(k) are unanimous in

treating it as the source of a private right to grievance procedures (see <u>Farley v. Philadelphia</u> <u>Hous. Auth.</u>, 102 F.3d 697, 702-03 (3d Cir. 1996), <u>Samuels v. Dist. of Columbia</u>, 770 F.2d 184, 196-98 (D.C. Cir. 1985) and <u>King v. Hous. Auth. of the City of Huntsville</u>, 670 F.2d 952, 954-56 (11th Cir. 1982)), although not necessarily specifying particular procedures guaranteed elsewhere in state law (<u>Hunter v. Underwood</u>, 362 F.3d 468, 477-79 (8th Cir. 2004)).

But a potential right to sue under Section 1437d(k) does not equate to an ability to prevail on the part of a plaintiff such as Luvert. Only "tenants" are given access to grievance procedures by Section 1437d(k) in the event of a "proposed adverse public housing agency action." That simply cannot be read to cover Luvert, so this opinion turns to her last potential source of relief -- the Constitution.

**Possible Right Under the Constitution**

While Luvert argues at greater length about the alleged violation of the Fourth and Fourteenth Amendments, the shortcomings of her regulatory and statutory claims hobble her constitutional claims in a rather straightforward manner. Neither the Act nor HUD regulations nor CHA's Administrative Plan afford her a property interest of which she was deprived.

That deficiency is conclusive regarding her constitutional claims, as there can be no violation of either procedural or substantive due process without an underlying property (or liberty) interest (see <u>Khan</u>, 630 F.3d at 527, 533, 535). Similarly, a plaintiff must have a possessory interest in property before there can be the meaningful interference with that interest

that the Supreme Court has said constitutes a "seizure" for purposes of the Fourth Amendment

(cf. <u>Soldal v. Cook Cty.</u>, 506 U.S. 56, 62-63 (1992)).[6]

Whether a person has a property interest sufficient to trigger the requirements for

procedural due process is a matter of well-settled law.  As summarized by <u>Khan</u>, 630 F.3d at 527

(citations and internal quotation marks omitted):

> To claim a property interest protected by the Fourteenth Amendment, a person . . .
> must have more than a unilateral expectation of [the claimed interest].  He must,
> instead, have a legitimate claim of entitlement to it.  A legitimate claim of
> entitlement to warrant a due process hearing occurs only when the statutes [or]
> regulations in question establish a framework of factual conditions delimiting
> entitlements which are capable of being explored at a due process hearing.  A
> property interest of constitutional magnitude exists only when the state's
> discretion is clearly limited such that the plaintiff cannot be denied the interest
> unless specific conditions are met.

Failure to establish such a property interest for purposes of procedural due process is also fatal to

any substantive due process claim here (<u>id.</u> at 535).  Moreover, because substantive due process

claims must rest on governmental encroachment on some fundamental right other than a mere

property interest, Luvert also fails on that score because there is no fundamental right to a

government subsidy (<u>id.</u> at 536).

Luvert advances three potential property rights that CHA might have violated:  the

claimed right to establish her eligibility for housing assistance (L. Mem. 4-5), the claimed right

of a tenant to continued participation in the Voucher Program (L. Mem. 6) and the claimed right

_____

[6]  Finding no entitlement to the subsidy of which Luvert was supposedly deprived, this
Court need not address whether such an entitlement could be "seized" in violation of the Fourth
Amendment as alleged in Count II.  It is worth noting, however, that the Fourth Amendment
does not cover all forms of property (<u>Soldal</u>, 506 U.S. at 62 n.7).

of an eligible applicant to continued participation in that program (L. Mem. 6-13).[7]  As the

following analysis of each of those claims demonstrates, Luvert fails on all three.

As to the first claimed right, it suffices to say that Luvert was not deemed ineligible, and

so the right of an applicant to establish his or her eligibility is not determinative of her suit.  That

point was made by one of the cases that Luvert herself cites (see Eidson, 745 F.2d at 461 n.6).

And as for the second claimed right, Luvert is not a tenant, so that the rights of tenants are

similarly beside the point.

Hence the only potential claim that Luvert can advance must be that, as an eligible

applicant who was issued a voucher, she has a right to receive a housing subsidy that can be

extinguished only by some change in her eligibility.  But that is an untenable position.  As

already discussed, HUD regulations in tandem with the Administrative Plan demarcate who does

and who does not have an entitlement to a housing subsidy, and the bare receipt of a voucher

does not cut it.

To elaborate on the underpinning for that conclusion, it is useful to look at claims to a

property interest that our Court of Appeals has passed upon in a number of instances in the

context of housing subsidies.  Because HUD regulations expressly state that landlords have no

right to participate in the Voucher Program, for example, they have no procedural due process

_____

[7]  Complaint ¶ 82 designates Luvert's asserted property interest as "continued
participation in the Voucher Program."  But instead of reiterating its point that she was not a
participant at all or addressing whatever property interests an applicant might have, CHA
inexplicably presses an argument that she had no property interest because HUD regulations do
not provide an opportunity for informal review (C. Mem. 7-8).  Now, a plaintiff cannot establish
a procedural due process violation in the absence of any interest to be protected beyond the
expectation of a particular process (Crenshaw v. Baynerd, 180 F.3d 866, 869 (7th Cir. 1999)),
but a defendant certainly cannot defeat a procedural due process claim by quoting the regulations
that deprive her of procedures!

rights when they are denied future participation (Khan, 630 F.3d at 528-29). Similarly, applicants eligible for the Voucher Program do not have a protected right to any particular housing unit and so are not entitled to procedural due process when a prospective landlord refuses to lease to them, in part because there are no facts that the applicant could introduce to demonstrate that the landlord's denial was objectively wrong (Fincher v. S. Bend Heritage Found., 606 F.3d 331, 333–35 (7th Cir. 2010) (reaffirming Eidson v. Pierce, 745 F.2d 453 (7th Cir. 1984))). There is such a thing as "program tenure" analogous to the job tenure conferred upon teachers, but the significance of that program tenure is that "until the certificate expires, it gives the family the right to continue participating in the program so long as the PHA lacks just cause to expel it" (Simmons, 716 F.2d at 1162 (emphasis added)). [8]

To be sure, one question that has not been posed to our Court of Appeals is whether an applicant for participation in the Voucher Program somehow possesses a property interest in the potential for participation that her voucher represents even when the voucher by its own terms has expired, at least if she has been diligent in attempting to obtain suitable housing.[9] But on that score the logical answer has to be that given by the Court of Appeals for the Ninth Circuit, albeit in an unpublished opinion: HUD regulations establish no arguable expectation in the granting of an extension because extensions are left entirely to the discretion of the PHA

_____

[8] What is emphasized in the text's quotation from Simmons is relevant here because the "certificates" mentioned there have since been merged with the vouchers at issue in this lawsuit (see Section 8 Certificate and Voucher Programs Conforming Rule, 60 Fed. Reg. 34660 (July 3, 1995)). Before that merger the same rules governed the expiration of both certificates and vouchers (see Chesir, 801 F. Supp. at 246).

[9] Although Luvert cites Holbrook v. Pitt, 643 F.2d 1261 (7th Cir. 1981) in an effort to argue that precedent compels finding a property interest, that contention is simply not based on a fair portrait of the facts of that case.

(Burgess v. Alameda Hous. Auth., 98 F. App'x 603, 605 (9th Cir. 2004)).  Because Reg. 303(b) expressly makes extensions discretionary, the voucher holder can have no legitimate expectation of or right to an extension (id.).

In further support of that conclusion, this action lacks any "framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing" (Khan, 630 F.3d at 527 (internal quotation marks omitted)).  Luvert seeks to overcome that deficiency by identifying issues that would be disputed at a hearing:  whether she was denied assistance for an invalid reason and whether CHA appropriately examined the factors that Reg. 552(c)(2) says a hearing officer must consider in determining whether to deny or terminate assistance (L. Mem. 10).  But contrary to Luvert's artful arrangement of her quotation from Reg. 552(c)(2), that regulation lists factors that "[t]he PHA may consider," not that a hearing officer must consider.  Even beyond that, the bare suggestion of "information which might be relevant" does not constrain a decisionmaker's discretion with "any legal criteria" if it does not "provide . . . guidance in weighing that information" (see Eidson, 745 F.2d at 462 (emphasis omitted)).[10] Similarly, Plan 5-10 makes it clear that the circumstances that must be present before CHA will entertain a request for an extension do not guarantee an extension.

_____

[10]  It is really bizarre for Luvert to advance Baldwin v. Hous. Auth. of the City of Camden, 278 F. Supp. 2d 365 (D.N.J. 2003) as purported support for her contrary position on this issue.  Even apart from the non-precedential status of that District Court opinion, it (id. at 377-80) relies heavily on the due process analysis in Ressler v. Pierce, 692 F.2d 1212 (9th Cir. 1982), while our own Court of Appeals "has consistently followed the reasoning of Judge Hufstedler's dissent in Geneva Towers [Tenants Org. v. Federated Mortgage Investors, 504 F.2d 483, 494 (9th Cir. 1974)] rather than the majority opinion relied on in Ressler" (Eidson, 745 F.2d at 460).

Moreover, where our Court of Appeals has addressed a claimed expectation as to a renewal past an expiration date (such as in Head v. Chicago Sch. Reform Bd. of Trs., 225 F.3d 794 (7th Cir. 2000), dealing with an employment contract), it has reiterated that a "mere opportunity to acquire property . . . does not itself qualify as a property interest protected by the Constitution" (id. at 802). Hence Luvert's overly simplistic contention that "[o]nce created, a property right may not simply expire" (L. Mem. 11) would impermissibly rewrite due process jurisprudence as exemplified by Khan and Simmons, and this Court declines Luvert's invitation to do so.

### Luvert's State Law Claims

With no federal claims having survived scrutiny, the familiar teaching of United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27 (1966) and its progeny (now codified in 28 U.S.C. § 1367(c)(3)) is that, as stated earlier in this opinion, "the usual and preferred course is to remand the state claims unless there are countervailing considerations" (Williams v. Seniff, 342 F.3d at 794). No such considerations are present here as to the state law causes of action advanced in the Complaint's Counts IV and V.

In particular, Luvert's attempted invocation of CHA's Administrative Plan fails because that Plan is a creature of state law. Nor can Luvert bootstrap that Plan into serving as the source of federal rights actionable under 42 U.S.C. § 1983 by pointing to Reg. 54(c) as requiring compliance with a PHA's administrative plan (see L. Mem. 18). On that score it is plain that Reg. 54, which addresses the paperwork that a PHA must file with HUD if it wants federal dollars, flunks the test succinctly stated in Sandoval, 532 U.S. at 291:

> Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.

In sum, the surviving state law counts are returned to their place of origin, the Circuit Court of Cook County, with no expression of views by this Court as to their merit or lack of merit under state law.

### Conclusion

For the reasons stated at length in this opinion, Counts I through III of the Complaint are dismissed, removing the federal underpinning for subject matter jurisdiction over Counts IV and V. Accordingly what remains of this action is remanded to the Circuit Court of Cook County (see 28 U.S.C. § 1447(c)), and the Clerk of this District Court is ordered to mail a certified copy of the order of remand to the Clerk of that state court forthwith.

Milton I. Shadur
Senior United States District Judge

Date: November 6, 2015

- 22 -